IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY N. DAVIS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 03-JEO-1539-E |
| COLONIAL BANCGROUP, d/b/a COLONIAL BANK, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action, the plaintiff, Kimberly N. Davis (hereinafter "Davis" or "the plaintiff"), a former employee of the defendant, Colonial BancGroup, d/b/a/ Colonial Bank (hereinafter "Colonial Bank" or "the defendant"), asserted in the first count of her initial state court complaint that she was the victim of "reverse" discrimination when she was terminated by the defendant. (Complaint at ¶ 14).[1] She also asserted a second claim for breach of contract against the defendant for its "intentional or gross and reckless" conduct in terminating her. (*Id.* at ¶ 22). The case was removed from Calhoun Circuit Court to this court on June 25, 2003. (Doc. 1).

Colonial Bank has filed a motion to dismiss, or, in the alternative for a more definite statement. (Doc. 3). The plaintiff has filed a motion for leave of court to file an amended complaint, restating the second count, as a claim that she was "wrongfully discharged," and adding a third claim of defamation. (Doc. 7, Amendment to Complaint). She has also filed a motion to remand. (Doc. 10). The defendant has moved to dismiss the second and third claims in the amended complaint. (Doc. 15). The plaintiff next filed a second motion for leave to file

---

[1] The complaint is attached to document 1.

an amendment to the amended complaint. (Doc. 19). Therein, she adds information concerning the defamation count. (*Id.* (Amendment to Amended Complaint)). The defendant filed a motion for an extension of time to reply to the plaintiff's response to the motion to dismiss. (Doc. 23). It then filed a motion to strike the plaintiff's exhibit that was attached to her response to the motion to dismiss. (Doc. 24). Lastly, the defendant filed a motion to substitute the original affidavit of Andrea McCain that is offered in support of the motion to dismiss. (Doc. 26).

## BACKGROUND[2]

The plaintiff worked for the defendant as a vault teller until her termination on December 26, 2002. Just prior to her termination, the defendant learned about a discrepancy in its accounts of approximately $5,201.00. The loss was discovered when the plaintiff was on vacation. The defendant attributed this loss to her and terminated her. The plaintiff asserts that she was not responsible for the loss because she was not working at the time of the shortage. She also states that after her termination, the defendant allegedly damaged her reputation by telling others that she took the money.

## MOTION TO STRIKE

The defendant has moved to strike the plaintiff's attachments that were offered in support of her response to the motions to dismiss. (Doc. 24). It asserts that the documents, entitled "Teller Performance Guidelines," are not properly authenticated. The defendant also notes that the plaintiff "quotes at length from a document allegedly entitled, 'Colonial Bank Teller

---

[2] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Performance Guidelines, Effective September 2, 2002'" yet failed to attach the same. (*Id.* at ¶ 1). The plaintiff has not responded to this motion.

The defendant is correct that unauthenticated documents usually cannot be considered in determining a motion for summary judgment. The evidence must be capable of being reduced to an admissible form at trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). After reviewing the "Teller Performance Guidelines," the court will assume for purposes of this motion that the plaintiff will be able to reduce these documents to admissible form at trial, warranting their consideration at this juncture. *See Hill v. Manning*, 236 F. Supp. 2d 1292, 1297 (M.D. Ala. 2002). The same cannot be said of the quoted sections from what the plaintiff identifies as the September 2002 "Performance Guidelines." Simply quoting from some purported document that is not before the court is insufficient. The motion is due to be granted as to this material. The court notes, however, that, even if this material was considered, it would not change the results of the court's consideration on the motions before it.[3]

## MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

As is discussed below, the defendant's motions to dismiss (doc. 3 & 15) are premised, at least in part, on evidence outside the pleadings. Accordingly, the motions should be reviewed under the summary judgment standard applicable to Rule 56 motions. *See* FED. R. CIV. P. 12(b).

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is

---

[3] The defendant also asserts that the plaintiff's submission was untimely. (Doc. 24 at 2). Assuming, for the sake of argument, that the plaintiff's supporting material was untimely submitted, the court declines to strike the same under the present circumstances.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant

need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## Discussion

The defendant initially asserts in its first motion to dismiss that the original second count contains vague and conclusory allegations insufficient for this court and the defendant to determine the basis for the claim. (Doc. 3 at 2). The defendant further asserts that to the extent that the second count attempts to assert a wrongful termination claim it is due to be dismissed because no such action exists under Alabama law. (*Id.*). Colonial Bank notes that the plaintiff's employment was terminable "at-will." (*Id.* citing *Hinrichs v. Tranquilaire Hosp.*, 352 So. 2d 1130, 1131 (Ala. 1977)). Additionally, the defendant notes that the Alabama courts have held that there is no exception to the employment-at-will doctrine based on the public policy against discrimination. (*Id.*). Finally, the defendant asserts that the second count is so vague and ambiguous that it violates Federal Rule of Civil Procedure 8(a) and should be dismissed. Alternatively, it requests that the plaintiff be required to provide a more definite statement. (*Id.* at 4-5).

In response to the defendant's motion, the plaintiff filed a motion for leave to amend the complaint. (Doc. 7). She also objected to the motion to dismiss in light of her motion. (*Id.* at ¶ 3). The court finds that the motion to amend (doc. 7) is due to be granted and the amended complaint, including the plaintiff's claim for "Wrongful Discharge for Breach of [the] Covenant of Good Faith" and defamation, be allowed. (Counsel's Aff. at 2). Additionally, the court finds

that the first motion to dismiss (doc. 3) is moot because it relates to the original complaint. The court deems it to be subsumed by the subsequent motion to dismiss.

## Motion to remand

Although not a part of the consideration concerning the defendant's second motion to remand, the court finds it appropriate at this juncture to address the plaintiff's motion to remand. It is premised on the assertion that the rights she asserts in the complaint do not "'arise under' Federal law." (Doc. 10 at ¶¶ 1-2). She states that she has amended her complaint to assert that counts two and three are premised on state law claims, including breach of a covenant to act in good faith and defamation. (*Id.* at ¶ 3). Therefore, she concludes that they state common law claims and do not raise a federal question sufficient to invoke the jurisdiction of this court. (*Id.* at ¶ 4). She further asserts that the federal race discrimination issue is "incidental to the common law issues," which predominate. (*Id.*). She cites 28 U.S.C. § 1367(c)(2) in support of her argument.

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Pursuant to section 1367(c)(2) the courts have the discretion to refuse to exercise their supplemental jurisdiction if, among other reasons, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). However, section 1367(c) does not authorize the court to remand to a state court a case that includes a properly removed federal claim.

A review of the complaint in this case demonstrates that the first count is a federal

7

discrimination claim. *See* 42 U.S.C. § 2000e. Despite the plaintiff's protestations, the existence of this claim requires this court to exercise jurisdiction over the same. Additionally, under the facts, the court specifically finds that the plaintiff's defamation claim is derived from her termination claim. It does not predominate the federal claim. Even if the court could conclude that the state law claims predominate, the court would not be authorized to remand the entire case to state court. *See In re City of Mobile*, 75 F.3d 605, 608 (11th Cir. 1996). Accordingly, the motion to remand (doc. 10) is due to be denied.

### Second motion to dismiss

The next matter is the defendant's second motion to dismiss, which seeks to have this court dismiss the plaintiff's second and third claims. (Doc. 15). The defendant asserts that the breach of contract claim must fail because there is no employment contract in this case that modifies the "at will" doctrine. (Doc. 15 at 2). It further asserts that the defamation count must fail because the plaintiff fails to allege facts sufficient to state a claim. (*Id.* at 6).

### Breach of contract claim

The plaintiff alleges her contract claim against the defendant is derived from the employee handbook and other documents, which provide disciplinary procedures concerning teller outages. She claims that the documents constitute a unilateral contract dealing with the procedures to be followed if termination is being considered. (Doc. 20 at 4).

The Alabama Supreme Court in *Ex parte Graham*, 702 So. 2d 1215 (Ala. 1997) stated:

> "[I]n the appropriate case, language contained in an employee handbook can be sufficient to create a binding contract." *Barksdale v. St. Clair County Commission*, 540 So. 2d 1389, 1390 (Ala. 1989) (emphasis in original).
>
> "It is well settled that a contract of employment-at-will may be terminated

8

>by either party with or without cause or justification, but the employment-at-will relationship can be modified by provisions in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes. *See Bell v. South Central Bell*, 564 So. 2d 46, 48 (Ala. 1990).

*Id*. at 1218. The cases cited by the court in *Graham* make it clear that this issue is fact specific.

In the present matter, the plaintiff asserts that the "Performance Guidelines" in the defendant's employee handbook, dealing with disciplinary actions involving cash overages and shortages constitute a unilateral contract supporting her breach of contract claim. The defendant disagrees. It asserts that the handbook contains various disclaimers precluding the plaintiff from using the same to support her claim. The court finds the defendant's arguments convincing on this claim.

The plaintiff's initial application for employment with the defendant states that she "agree[d] and underst[ood] that [her] employment is for no definite duration and may be terminated at will" by either party. (Doc. 15 at Ex. A). It also states that "the Employee handbook or statements of Company policy is [sic] not a contract, should not be construed as a contract and cannot create a contract." (*Id*.). The employee handbook provided the plaintiff at the time of her employment with the defendant states, "This handbook and other statements of Colonial policy are prepared for informational purposes only and do not constitute a contract between Colonial and its employees and should not be construed as such." (*Id*. at Ex. 2). It further states, "Employment by Colonial is not for a definite term and may be terminated by Colonial or the employee at any time, for any reason." (*Id*.).

The defendant's November 2002 revised employee handbook also unequivocally states in the introduction in bold print that it "and other statements of Colonial policy are prepared for

9

informational purposes only and do not constitute a contract between Colonial and its employees and should not be construed as such." (Doc. 25, Ex. 1A). It further states, "Employment by Colonial is not for a definite term and may be terminated by Colonial or the employee at any time, for any reason." (*Id.*). The acknowledgment of receipt of the defendant's policies signed by the plaintiff also states as follows:

> This is to acknowledge that I have received, read, and understand the contents of the Human Resources Policies. I understand I am charged with knowledge of the contents of the Human Resources Policies and agree to abide by these policies at all times. I understand that the Human Resources Policies and other statements of Colonial policy are prepared for informational purposes only and do not constitute a contract between Colonial and its employees, and should not be construed as such. The policies of Colonial may be changed or amended at any time, with or without notice unless dictated otherwise by statute. Employment by Colonial is not for a definite term and may be terminated by Colonial or the employee at any time, for any reason. No supervisor or representative of Colonial, except for the Chairman & CEO of Colonial BancGroup, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement inconsistent with this acknowledgment. For any agreement to be valid, the agreement must be in writing, designated as an employment agreement and signed by the Chairman & CEO of Colonial BancGroup or Regional President/CEO.

(*Id.* at Ex. 1B).

Juxtaposing the plaintiff's allegations with the foregoing disclaimers and admonitions, the court finds that the defendant's motion for summary judgment is due to be granted. The foregoing disclaimers and admonitions preclude the court from finding that there is a dispute of material fact warranting the denial of the motion. The plaintiff was warned and on notice that the defendant's September 2002 policy statements concerning cash overages and shortages were not a unilateral contract. At the time of her employment, the plaintiff agreed that her relationship with the defendant was "at will." The handbook and the cited policies cannot under the present

circumstances be considered a contract of employment and the plaintiff acknowledged this by her signatures on the "Statement of Agreement," signed September 14, 2001, and the "Acknowledgment of Receipt," signed December 9, 2002.

### Defamation claim

The plaintiff asserts that the defendant "defamed her by publishing statements after she was terminated that she stole the money." The defendant asserts that summary judgment is due to be granted on this claim because the plaintiff has failed to allege the requisite elements of a defamation claim. The court afforded the plaintiff an opportunity following the hearing on the motions to dismiss to amend the complaint and to further articulate the claim. The proposed amendment to the amended complaint, which is included with the plaintiff's second motion to amend the complaint, provides additional information concerning this claim. Specifically, she alleges that she "will produce three (3) witnesses that will testify at trial that they were told or made aware by the defendant's employees that the plaintiff was fired because she "stole money." (Amendment to the Amended Complaint). The plaintiff identifies the three witnesses by name in the complaint.

"The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Drill Parts and Service Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993), quoting *McCaig v. Talladega Publishing Co.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (Second) of Torts § 558 (1977)).

The defendant asserts that the plaintiff's complaint is deficient in two ways. First, it fails to specify how the witnesses were "made aware" by the defendant's employee's of the basis of her termination. (Doc. 25 at 10). Second, it fails to allege that the communications were unprivileged. (*Id.* at 11).

Regarding this claim, the pertinent law is succinctly stated in *Atkins Ford Sales v. Royster*, 560 So. 2d 197 (Ala. 1990):

> To establish a prima facie case of defamation, the plaintiff must show that the defendant published a false and defamatory statement concerning the plaintiff to a third person. *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085 (Ala. 1988). Statements made subject to a qualified privilege are not actionable unless the plaintiff can prove that the defendant acted with malice. *Mead Corp. v. Hicks*, 448 So. 2d 308, 313 (Ala. 1983). The determination of whether a statement is privileged is a question of law for the trial judge. *Webster v. Byrd*, 494 So. 2d 31 (Ala. 1986). The test for determining whether a conditional or qualified privilege exists is as follows:
>
>> "'Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.'"
>
> *Willis v. Demopolis Nursing Home, Inc.*, 336 So. 2d 1117 (Ala. 1976)(quoting *Berry v. City of New York Ins. Co.*, 210 Ala. 369, 98 So. 290 (1923)).

*Royster*, 560 So. 2d at 200. Additionally, communications between employees within the line and scope of their duties are not publication to a third party. *See Schrimsher v. Liberty Nat. Life Ins. Co.*, 655 So. 2d 986, 988 (Ala. 1995); *Burns v. Pickwick Hotel*, 607 So. 2d 187, 189 (Ala. 1992). In *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988), the Alabama

Supreme Court stated:

> . . . . In *K-Mart* [*Corp. v. Pendergrass*, 494 So. 2d 600 (Ala. 1986)], an employee successfully sued her employer, K-Mart, for defamation. On appeal, one of the primary issues was whether communications between K-Mart employees concerning the plaintiff-employee's alleged misappropriation of corporate funds constituted a defamatory publication. This Court, quoting *Dixon v. Economy Co.*, 477 So. 2d 353 (Ala. 1985), stated:
>
>> "'Communications among the managerial personnel of a corporation about the company's business do not constitute a publication, under the rule of *McDaniel v. Crescent Motors, Inc.*, 249 Ala. 330, 31 So. 2d 343 (1947).'"
>
> *K-Mart*, at 603. Finding that the defamatory communication was made between managerial employees and concerned corporate business, we held that the communication was not a publication and thus reversed the plaintiff's judgment. *See, also, Burney v. Southern Ry.*, 276 Ala. 637, 642, 165 So. 2d 726, 730-31 (1964), in which this Court stated:
>
>> "[W]here the letter is dictated by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation and the letter is sent to another fellow corporate employee and it is in respect to that employee's relations with the corporation, there is not sufficient publication to sustain an action for libel."

Still further, an employee is entitled to a qualified privilege in reporting suspected theft of his or employer's property. *Mead Corp. v. Hicks*, 448 So. 2d 308, 313 (Ala. 1983). If a defendant asserts a qualified privilege, as Colonial Bank does, a "plaintiff must plead defamation with actual malice and bears the burden of proving defamation with actual malice to prevail." *Ex parte Blue Cross and Blue Shield of Alabama*, 773 So. 2d 475, 478-79 (Ala. 2000). "The affirmative defense of qualified privilege so pleaded and proved will defeat a claim of innocent or mistaken defamation, because this defense negates the malice implied by the mere falsity of a defamatory statement." *Ex parte Blue Cross and Blue Shield of Alabama*, 773 So. 2d at 479

(citing *Lawson v. Hicks*, 38 Ala. 279, 285 (1862); APJI 23.12). "'[A]ctual malice' means common law malice, which 'may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like.'" *Hayes v. Wal-Mart Stores, Inc.*, 953 F. Supp. 1334, 1341 (M.D. Ala. 1996).

At such an early juncture in this case, the record has not been sufficiently developed for this court to determine the applicability of any privilege. Thus, the defendant's motion for summary judgment is due to be denied without prejudice to its right to raise the defense again at the appropriate time. However, because the amendment to the amended complaint does fail to allege that the communications were not privileged, the plaintiff will be afforded ten days from the date this memorandum opinion and the accompanying order are entered to file a third amended complaint properly alleging the elements of the offense.

## CONCLUSION

Premised on the foregoing, the defendant's first motion to dismiss (doc. 3) is moot; the plaintiff's motion to file an amended complaint (doc. 7) is granted; the plaintiff's motion to remand (doc. 10) is denied; the defendant's second motion to dismiss (doc. 15) is granted in part and denied in part; the plaintiff's motion to file an amendment to the amended complaint (doc. 19) is granted; the defendant's motion for an extension of time to reply (doc. 23) is moot; the defendant's motion to strike (doc. 24) is granted in part and denied in part; and the defendant's motion to substitute the affidavit of McCain (doc. 26) is granted. Accordingly, the breach of contract claim is due to be dismissed with prejudice. Additionally, the plaintiff will have ten (10) days from the date this opinion and order are entered to file a "Third Amended Complaint"

setting forth her first and third claims.[4] An order consistent with the findings and conclusions reflected in this memorandum opinion will be entered contemporaneously herewith.

The Clerk is directed to serve a copy of this memorandum opinion upon counsel for the parties.

**DONE,** this 3rd day of October, 2003.

JOHN E. OTT
United States Magistrate Judge

---

[4] The plaintiff should fully restate her remaining claims in the "Third Amended Complaint" without incorporating references to the prior complaints for the convenience of the parties and the court.